**Ruth M. DAISEY, Appellant,**

v.

**COLONIAL PARKING, INC., et al.,**
**Appellees.**

**No. 17703.**

United States Court of Appeals
District of Columbia Circuit.

Argued June 3, 1963.

Decided Sept. 27, 1963.

Mr. Irving Wilner, Washington, D. C., for appellant.

Mr. John F. Mahoney, Jr., Washington, D. C., with whom Messrs. Charles E. Pledger, Jr., Justin L. Edgerton and R. Harrison Pledger, Jr., Washington, D. C., were on the brief, for appellees.

Before BAZELON, Chief Judge, and WILBUR K. MILLER and BURGER, Circuit Judges.

BAZELON, Chief Judge.

Our appellant, Ruth M. Daisey (plaintiff), sued the appellee corporations (defendants) for damages for personal injuries sustained on their premises by reason of their negligence. At the close of her counsel's opening statement, the defendants moved for a directed verdict on the ground that the statement admitted facts showing plaintiff was a trespasser to whom they owed no duty of care except that of refraining from intentional injuries and from maintaining a "hidden engine of destruction." The court granted the motion and entered final judgment against the plaintiff. She appeals.

" 'To warrant the court in directing a verdict' for a defendant on a plaintiff's opening statement 'it must clearly appear, after resolving all doubts in plaintiff's

favor, that no cause of action exists.' "[1] We think it does not so appear here.

The opening statement encompassed the following: About 6:00 p. m., on January 24, 1960, plaintiff left her place of employment, 3315 Connecticut Avenue, N.W., through the rear exit (marked "A" on appended map)[2] which opened into a public alley. Night had fallen, and a drizzle lowered visibility even further. Plaintiff intended to walk through the alley to get to her car on nearby Ordway Street (marked "B"), but the sight of a pedestrian in a light-colored garment drew her attention to a concrete walk (marked "C") leading directly out of the alley into Ordway Street. She thereupon proceeded diagonally across the alley toward the walk until she tripped over an object (at point "D"), which proved to be a chain hung loosely from two posts, and was injured. The posts and chain were part of a parking area under the defendants' control. Each parking space was marked off with a similar chain preventing unauthorized use of the space. The parking area lay between the alley and the concrete walk, but the walk appeared to provide an unrestricted means of access from the alley to the street. There was no visible indication to pedestrians headed toward the concrete walk that they were leaving the public area and entering private property. The chains and posts ran approximately along the line dividing the public alley from the privately owned parking area, but were dark in color and not visible in the existing light after dark in bad weather. The posts were about three feet in height; the centers of the chains hung between them were only two or three inches from the ground.

Ordinarily a trespasser "may recover only for intentional, wanton, or willful injury or the maintenance of a hidden engine of destruction."[3] Several assumptions underlie this common-law imposition of only a minimal duty of care on landholders to protect trespassers from injury. "It is often said that people are not likely to trespass, so that the possessor of land may disregard their possible presence * * *," that "the duty of care towards trespassers would impose an unreasonable burden on the use of land," "that the trespasser is a wrongdoer," and that trespassers assume the risk of possible dangers since they know the premises are not prepared for them.[4]

Courts have long recognized, however, that there may be circumstances in which these assumptions do not apply. Thus, for example, "where the trespasser is a child, one important reason for the general rule of non-liability is lacking. Because of his immaturity and lack of judgment, the child is incapable of understanding and appreciating all of the possible dangers which he may encounter in trespassing, and he cannot be expected to assume the risk and look out for himself.".[5] Accordingly, the landholder's duty of care to a child is measured by the reasonably foreseeable dangers to the child qua child, not qua trespasser.[6]

Courts have also recognized that the assumptions underlying the minimal duty of care to trespassers at common law may not apply where the premises entered abut on a public way. If a landholder "arranges part of his premises so as to lead people to think that they are part of the highway, e. g., by paving part of his land as a continuation of the side-

1. Greene v. Hathaway, 89 U.S.App.D.C. 229, 230, 191 F.2d 656, 657 (1951), citing Best v. District of Columbia, 291 U.S. 411, 415–416, 54 S.Ct. 487, 78 L.Ed. 882 (1934).

2. Since no evidence was allowed to be offered below, the map is not in evidence, but plaintiff's counsel referred to it without objection during his opening statement, and counsel for both parties did so in their arguments on appeal.

3. Firfer v. United States, 93 U.S.App.D.C. 216, 219, 208 F.2d 524, 528 (1953).

4. See 2 Harper & James, The Law of Torts 1436–40 (1956).

5. Prosser, Law of Torts 438 (2d ed. 1955).

6. See, e. g., McGettigan v. National Bank of Washington, 115 U.S.App.D.C. 384, 320 F.2d 703 (supplemental opinion filed June 27, 1963). And see 2 Restatement, Torts § 339 (1934).

walk, he comes under a duty of care to keep that part of his land reasonably safe for travelers." [7] Moreover, "the law recognizes that travelers are likely to stray * * * from the boundaries of the highway, and requires possessors of abutting land to use care to prevent artificial conditions on it from being unreasonably dangerous to those who may foreseeably deviate in this way." [8] Such circumstances fairly appear from the opening statement in the present case. The public alley and private parking area were stated to be "just one wide concrete paved surface having the same coloration, the same features." And counsel asserted that "the evidence will show that for many years this walk [marked "C"] * * was used by the public indiscriminately. Anyone who wanted to get from the alley or to the rear of any of these commercial establishments into Ordway Street would use this walk as a means of walking to or from both in the daytime and in the evening." As the diagram indicates, persons using the walk as a means of entering or leaving the alley could hardly do so without crossing the parking area.

In any event, although the opening statement permitted, it did not require classification of plaintiff as a "trespasser" for the purpose of determining the defendants' duty of care. Other classifications, discussed in Firfer v. United States, 93 U.S.App.D.C. 216, 208 F.2d 524 (1953), include (1) invitees, (2) licensees by invitation (direct or implied), and (3) bare licensees or licensees by acquiescence. An invitee enters land for the benefit of both himself and the landowner or the landowner alone. A licensee by invitation is one "invited upon the land not for the benefit of the landowner but by him either by some affirmative act or by appearances which would justify a reasonable person in believing that such landowner (or occupant) had given his consent to the entry of the particular person or of the public generally." *Id.* at 219, 208 F.2d at 527.

Persons in these classes "may expect the owner and his agents to exercise reasonable and ordinary care and to provide reasonably safe premises," *ibid.*, and to refrain from active negligence. One who enters "not by invitation or permission but by mere sufferance or acquiescence," *id.* at 219, 208 F.2d at 528, is a "bare licensee," who may recover if defendants "knowingly permit such licensee to run upon a hidden peril * * *." *Ibid.*

Clearly plaintiff was not an invitee. But we think the opening statement in this case contemplated evidence upon which a jury could find "appearances which would justify a reasonable person in believing" that there was "consent to the entry of the * * * public generally" onto defendants' property. Such a finding would constitute plaintiff "a licensee by invitation" to whom defendants owed a duty "to exercise reasonable and ordinary care and to provide reasonably safe premises." And even if plaintiff entered merely by "sufferance or acquiescence" so as to be a bare licensee, the evidence might have shown the chain to be a "hidden peril." "Dangers that reasonably careful people are likely not to discover are latent or hidden." Gleason v. Academy of the Holy Cross, 83 U.S.App.D.C. 253, 254, 168 F.2d 561, 562 (1948).

Our discussion of the subclassifications and exceptions to the invitee-licensee-trespasser trinity shows that discrete classifications are being replaced by a logical continuum equivalent to the ordinarily rule of negligence requiring due care under all the circumstances.[9] In 1958 the Supreme Court decided that admiralty cases would be governed by the ordinary rule of negligence rather than by classifications based on the common law's "conceptual distinctions." Writing for a unanimous Court, Mr. Justice Stewart said:

"The distinctions which the common law draws between licensee and invitee were inherited from a cul-

---

7. 2 Harper & James, The Law of Torts 1445 (1956).

8. *Ibid.*

9. See Eldredge, Tort Liability to Trespassers, 12 Temp.L.Q. 32, 34 (1937).

ture deeply rooted to the land, a culture which traced many of its standards to a heritage of feudalism. In an effort to do justice in an industrialized urban society, with its complex economic and individual relationships, modern common-law courts have found it necessary to formulate increasingly subtle verbal refinements, to create subclassifications among traditional common-law categories, and to delineate fine gradations in the standards of care which the land owner owes to each. Yet even within a single jurisdiction, the classifications and subclassifications bred by the common law have produced confusion and conflict. As new distinctions have been spawned, older ones have become obscured. Through this semantic morass the common law has moved, unevenly and with hesitation, towards 'imposing on owners and occupiers a single duty of reasonable care in all the circumstances.' " [Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 630–631, 79 S.Ct. 406, 409, 3 L.Ed.2d 550 (1959).] [10]

And in Hecht Co. v. Jacobsen, 86 U.S. App.D.C. 81, 180 F.2d 13 (1950), where "the charge given to the jury below proceeded on the theory that there are three degrees of care and, upon the authority of the elevator cases, that appellant [department store] was obligated to exercise the 'highest degree of care' " in the maintenance of its escalator, we said:

"We do think, however, that it would have been more in accord with the modern authorities to discuss the standard of conduct required of appellant in terms of 'reasonable care under all the circumstances.'

That formula contains within it the potential for flexibility in application * * * necessary to deal with the infinite number of fact situations which may arise. It readily permits change with changing circumstances." [Id. at 83, 180 F.2d at 15.]

As applied to trespassers the standard of ordinary care does not impose new burdens on landholders. They remain masters of their domain. And they are not expected to assume burdens of care which are unreasonable in the light of the relative expense and difficulty to them as weighed against the probability and seriousness of the foreseeable harm to others.[11] But when the trespassers are not only reasonably foreseeable, but reasonably expected, the landholder may be required to exercise due care to keep trespassers out, warn them of hazards, or otherwise protect them.[12]

In reversing the judgment below, we intimate no opinion of the merits. We decide only that appellant's opening statement may be read to encompass a valid theory of recovery, and she is therefore entitled to present her evidence.

Reversed and remanded.

BURGER, Circuit Judge (concurring).

I concur in the result reached but on the narrower ground that in directing a verdict on an opening statement all doubts as to whether a theory of recovery is set out must be resolved in favor of the plaintiff. Greene v. Hathaway, 89 U.S.App.D.C. 229, 191 F.2d 656 (1951). At this stage I see no need to go beyond this point.

WILBUR K. MILLER, Circuit Judge (dissenting).

The opening statement did not promise to prove a breach of the duty owed to a

---

10. In England, after thorough study (Law Reform Committee, Third Report, Cmd. No. 9305 (1954)), the common-law distinctions between invitees and licensees have been abolished by statute. Occupiers' Liability Act, 1957, 5 & 6 Eliz. 2, c. 31. Although professing a continued support of the low standard of duty toward trespassers, the Committee Report (pp. 15–16) approved the practice of finding a

"tacit license" as to "habitual trespass" and as to *prima facie* trespassing" of children.

11. See Conway v. O'Brien, 111 F.2d 611 (2d Cir. 1940).

12. Mere warnings not to trespass may not be sufficient if the landholder knows they will not be heeded. See Lowery v. Walker, [1911] A.C. 10 (1910).

trespasser. In still thinking that liability in a case like this can arise only from such a breach, I suppose I am hopelessly old-fashioned.