**SAFEWAY TRAILS, INC., Appellant,**

**v.**

**Herbert C. SCHMIDT, Appellee.**

**SAFEWAY TRAILS, INC., Appellant,**

**v.**

**John G. LEWIS, Appellee.**

**Nos. 3932, 3933.**

District of Columbia Court of Appeals.

Argued Oct. 17, 1966.

Decided Jan. 6, 1967.

Betty Southard Murphy, Washington, D. C., for appellant. Richard R. Paradise and William A. Paisley, Washington, D. C., were on the brief for appellant. Bradley G. McDonald, Washington, D. C., entered an appearance for appellant.

Glenn A. Mitchell, Washington, D. C., with whom Jacob A. Stein, Washington, D. C., was on the brief, for appellees.

Before HOOD, Chief Judge, and QUINN and MYERS, Associate Judges.

HOOD, Chief Judge.

Appellees, in separate actions consolidated for trial, sued appellant for damages for false arrests. After trial by jury, appellee Schmidt was awarded $1 compensatory damages and $400 punitive damages, and appellee Lewis $5 compensatory damages and $400 punitive damages. These appeals question only the awards of punitive damages.

The admitted facts are that appellees, men over 65 years of age, were passengers on a Trailways bus from Washington to the Laurel, Maryland, race track; that after the races they entered a Trailways bus to return to Washington, each having purchased a round-trip ticket; that the bus did not take its usual route in starting to Washington but turned towards Laurel and some passengers made some remarks concerning the new route; that when the bus reached Laurel the operator got out and returned with two Maryland State police who ordered appellees to get off the bus. They

protested but complied with the officers' order. Before leaving the bus appellees were given transfers good on another bus. The police did not detain appellees after they left the bus and no charges were placed against them.

The dispute relates to what occurred prior to appellees being compelled to leave the bus. The bus driver testified that when he deviated from the usual route he heard a commotion and loud cursing in the back of the bus. He could not recall the exact words used, but remembered someone saying: "Where in the hell does he think he is going. He is going the wrong way." He also remembered that someone said: "This Trailways system is the stupidest system I have ever seen." He testified he looked in the rear view mirror and saw that appellees were doing the talking, and called to them to watch their language and keep their voices down or they would have to leave the bus. He could not say which appellee made which remark, but both kept on talking. As soon as he could safely stop he called a state trooper to remove appellees. The driver also testified that a woman passenger identified appellees as the ones who were doing the talking, but he failed to get her name or that of any other passenger.

The officer testified he was directing traffic when the bus stopped, that the bus driver said he was having trouble with two men and asked him to get them off, saying both were intoxicated. The officer, with another officer, entered the bus, asked what the problem was, and was told by the driver that appellees had been drinking and were swearing and annoying other passengers. An unidentified woman passenger made the same complaint. The officer testified that in his opinion both appellees had been drinking. He ordered appellees to leave the bus, told them to get a cup of coffee, walk around a little and catch the next bus.

Appellees' testimony was that although they had known each other for several years, they did not go to the races together, that it was only coincidental they were on the same bus returning to Washington, and that they were not seated together. Each testified he had not been drinking and in fact never used alcoholic beverages. They also testified that when the bus departed from the usual route, there was some mild discussion among other passengers, but that they did not discuss the matter with anyone nor did they direct any comments to the driver or anyone concerning the route. They specifically denied using any loud, boisterous or profane language. A passenger testifying for appellees stated that to his knowledge and observation neither appellee discussed the route, directed comments to the driver or otherwise caused a disturbance on the bus.

Appellee Schmidt testified that after the driver had stopped the bus and returned with the officers, the driver pointed to Schmidt and asked that he be removed, and that the officer without questioning anyone ordered him off and led him by the arm to the door.

Appellee Lewis testified that when Schmidt was being escorted to the door, he (Lewis) asked why this was being done, and the bus driver then said "Put him off, too"; whereupon the officer ordered him off and escorted him to the door.

■ In view of the jury's verdicts, we must accept the appellees' version of what occurred. Nevertheless, appellant argues that it was improper to submit the question of punitive damages to the jury. For this proposition appellant relies heavily upon the decision in Giddings v. Zellan, 82 U.S. App.D.C. 92, 160 F.2d 585, cert. denied, 332 U.S. 759, 68 S.Ct. 61, 92 L.Ed 345 (1947). There the highest court of this jurisdiction ruled that under Maryland law punitive damages were not allowable in a case involving negligent operation of a motor vehicle. In reaching its conclusion the court quoted at length from Davison v. Gordon, 183 Md. 129, 36 A.2d 699, 156

A.L.R. 1109 (1944), also a case of negligent operation of an automobile. It is our view that *Giddings*, despite some general language in the opinion, holds only that Maryland law does not permit punitive damages for injuries inflicted by negligent operation of a motor vehicle, and has no application here.[1]

The Maryland law on the right of a passenger of a common carrier to recover damages for an unlawful ejectment is discussed at length in Dennis v. Baltimore Transit Co., 189 Md. 610, 615–617, 56 A.2d 813, 816–817 (1948). There it was said:

> If a passenger is not in any way at fault, the carrier will also be liable if he is arrested upon the request of the conductor while engaged in the performance of his prescribed duties. In expelling a passenger from a car or in requesting that he be arrested, the conductor acts at his peril and, if the expulsion or arrest is wrongful, the fact that the conductor acted under a misapprehension in supposing that he had been guilty of misconduct can afford no excuse to the carrier. for the tort committed, but the passenger may recover such damages as the jury may consider actual compensation for the unlawful invasion of his rights and the injury to his person and feelings. [Citations omitted.]

We further hold in this State that if an injury has been inflicted maliciously or wantonly, the jury are not restricted to an award of compensatory damages, but may award in addition thereto such punitive damages as the circumstances of the case may warrant as a punishment for the wrong done and as an example to others. (Citations omitted.) Thus punitive damages may be awarded to a passenger where he was ejected maliciously and wantonly, if the conductor acted within the general scope of his employment. * * * The word 'wanton' means characterized by extreme recklessness and utter disregard for the rights of others. (Citation omitted.) We specifically hold that, in a suit for damages brought by a passenger for false arrest made upon request of the conductor, it must be shown by the plaintiff in order to recover punitive damages that the conductor not only acted wrongfully but without just cause or excuse, and with the evil motive to injure and oppress, or at least with a reckless disregard of the rights of the person injured.

We think it is clear that in this case the jury, if they believed appellees and evidently they did, could have found that the driver acted wrongfully, without just cause or excuse, and "with a reckless disregard of the rights" of appellees. Such a finding would justify the award of punitive damages.[2]

Affirmed.

1. See Wyatt v. Pennsylvania Railroad Company, 154 F.Supp. 143, 149 (D.Del. 1957), where it is said that the rationale of the *Davis* case "seems to be applicable only in cases involving automobile collisions rather than the entire field of torts."

2. Contrary to the holdings in some jurisdictions [see, e. g., Safeway Stores v. Gibson, D.C.Mun.App., 118 A.2d 386 (1955), affirmed, 99 U.S.App.D.C. 111, 237 F.2d 592 (1956)], Maryland permits punitive damages to be awarded against an employer for the acts of an employee done in the course of his employment even though the employer neither participates in nor ratifies the act of the employee. Safeway v. Barrack, 210 Md. 168, 122 A. 2d 457 (1956).