Charles COPELAND, Appellant,

v.

BALTIMORE & OHIO RAILROAD
COMPANY et al., Appellees.

No. 79–474.

District of Columbia Court of Appeals.

Argued March 24, 1980.

Decided June 9, 1980.

Kenneth Shepherd, Washington, D. C., for appellant.

Loren Kieve, Washington, D. C., with whom Laidler B. Mackall, Washington, D. C., was on the brief, for appellees.

Before KERN, FERREN and PRYOR, Associate Judges.

PRYOR, Associate Judge:

Charles Copeland brought an action against the Baltimore & Ohio Railroad Company ("B & O" or "the Railroad") and two of its agents, to recover for injuries sustained when a part of one of Copeland's hands was severed by a freight train operated by B & O. On appeal, Copeland seeks to overturn an order[1] of the trial court granting the Railroad's motion for summary judgment. For the reasons stated below, we affirm.

1. *Copeland v. Baltimore & Ohio Railroad Company, et al.*, No. CA 4825–76 (D.C. Superior Court, Mar. 17, 1979).

## I

The pleadings, depositions, and affidavits of record indicate that on March 2, 1976, at approximately 9:40 a. m., a B & O train, operating in the District of Columbia, ran over Charles Copeland, who was on the railroad tracks in an unconscious or semi-conscious state, causing Copeland to have two fingers of his right hand amputated. Copeland did not have permission to be on the tracks, nor was he there by any volitional act on his part. According to his affidavit, and the findings of the trial court, Copeland had been placed on the tracks by one or more unknown persons, who took him from his front porch and while Copeland was semiconscious, transported him in an automobile to the tracks. Copeland did not recall being placed on the tracks.

At the time of the incident, the B & O train was traveling at approximately ten miles per hour over an area of the tracks located in Southeast Washington, D. C. between Pennsylvania Avenue or Sousa Memorial Bridge and the M Street Tunnel. The tracks are adjacent to a freeway. On the other side of the freeway lies the Anacostia River. As it was nighttime when the accident occurred, the headlights of the train were on, but were only capable of illuminating a distance of about fifty feet in front of the train. This was in violation of the standards set in 49 C.F.R. § 230.231 (1977), which require that locomotives in use between sunset and sunrise, "shall have a headlight which shall afford sufficient illumination to enable a person in the cab of such locomotive . . . to see in a clear atmosphere, a dark object as large as a man of average size standing erect at a distance of 800 feet ahead . . .."

When the persons in the cab of the locomotive saw Copeland they called out to the engineer who immediately blew the horn and placed the brake valve in the emergency position. The train was unable to stop, however, before running over the fingers of Copeland who, upon hearing the train horn blow, lifted his head, looked in the direction of the train, dropped his head and attempted unsuccessfully to withdraw his arm from the track.

Copeland sued the Railroad Company for the injuries sustained. After completing discovery, B & O moved for summary judgment, asserting that there were no genuine issues of material fact, and that the Railroad was entitled to judgment as a matter of law. *See* Super.Ct.Civ.R. 56. Reversing its earlier order denying the motion, the trial court granted the relief requested. The court's decision to grant the motion was primarily based on its findings that:

(1) Copeland was a trespasser and as such could only recover for intentional, wanton or willful misconduct of the railroad;

(2) A plaintiff-trespasser must establish willful or wanton misconduct by the railroad before his presence is discovered or the plaintiff-trespasser must establish ordinary negligence by the railroad after his presence is discovered;

(3) The repeated failure of B & O to have a headlight on the front of its locomotive which conformed to federal regulations could not constitute intentional, willful, or wanton misconduct on the part of B & O which would enable a trespasser or a bare licensee to recover for injury sustained when hit by the train which could not stop in time to avoid the collision.

We review the first finding separately, and findings two and three jointly.

## II

The trial court concluded that one who is placed upon the tracks by one or more unknown third persons, while in an unconscious or semiconscious state, is a trespasser, or at least, a bare licensee with respect to the landowner or occupier. The court's conclusion was based on this jurisdiction's holding in *Firfer v. United States,* 93 U.S.App.D.C. 216, 208 F.2d 524, 528 (1953).

In *Firfer* the court stated that, "a trespasser is 'a person who enters or remains upon land in the possession of another without a privilege to do so created by the

possessor's consent or otherwise.' Restatement of Torts, § 329 (1934)." This definition applies regardless of how the person entered the premises (accidentally, intentionally, or inadvertently), or why the person remained on the property. Thus, where, as here, one is on another's land without consent, that person is deemed a trespasser unless he or she comes within a recognized exception, e. g., "attractive nuisance" rule, so as to create a higher standard of care to the trespasser. See, e. g., *Hankins v. Southern Foundation Corp.*, 216 F.Supp. 554 (D.D.C.), aff'd 117 U.S.App. D.C. 150, 326 F.2d 693 (1963). This is clearly not an "attractive nuisance" case, nor can we find any exception to the trespasser rule under which we can classify Mr. Copeland. As such, the trial court was correct in classifying Mr. Copeland as a trespasser.

### III

Finding that Mr. Copeland was a trespasser, the trial court concluded that as a trespasser, Copeland was required to establish willful or wanton misconduct by the railroad before his presence was discovered, or ordinary negligence by the railroad after his presence was discovered, in order to recover for the injuries sustained.

■ In *Bremer v. Lake Erie & W. R. Co.*, 318 Ill. 11, 148 N.E. 862 (1925), the Illinois Supreme Court held that a railroad owes an undiscovered trespasser a duty to refrain from willfully or wantonly injuring him/her. Once the presence of a trespasser is known, the railroad must exercise ordinary care not to injure the trespasser. The court stated:

If by the exercise of ordinary care injury can be avoided, the defendant is liable for the failure to use such care, but to a trespasser, whose presence or whose danger is unknown, there is no duty to exercise ordinary care, though there is a duty not to injure him willfully or wantonly, or by such gross negligence as evidences willfulness. *Id.*, 148 N.E. at 864.

This standard has become generally accepted. See Prosser, Law of Torts § 58, at 369–70 (3rd ed. 1964). See also *Dobb v. Baker*, 505 F.2d 1041 (1st Cir. 1974); *Sabo v. Reading Company*, 244 F.2d 692, 694 (3rd Cir. 1957); *Olea v. Southern Pacific Company*, 272 Cal.App.2d 261, 77 Cal.Rptr. 332 (1969).

In the instant case, all are in agreement that once the railroad discovered the presence of the trespasser, it exercised ordinary care in attempting to avoid the collision. The engineer immediately blew the horn and placed the brake valve in the emergency position.

The pivotal question thus becomes whether, considering the railroad's entire course of conduct, *Olea, supra*, 77 Cal.Rptr. at 334, there is evidence from which a jury could find that the railroad willfully or wantonly injured appellant.[2] We conclude that there is not.

■ Examining the railroad's entire course of conduct, we find that at the time of the accident and on multiple trips on the same route prior to the accident, the train had operated in violation of the federal regulation. However, the mere violation of the regulation does not, of itself, make the omission willful or wanton misconduct. Restatement (Second) of Torts, Explanatory Notes § 500, Comment (e) at 589 (1965).[3] To find willful or wanton conduct, the statute or regulation must be intentionally violated and it must also appear that the omission will probably result in injury. In *Safeway Trails Inc. v. Schmidt*, D.C.App., 225 A.2d 317 (1967), this court approved a jury instruction which stated that wanton

---

2. We disagree with the trial court's refusal to consider the entire course of conduct of the railroad. We are persuaded by the language in *Olea, supra*, 77 Cal.Rptr. at 334, that evidence of other trips of the train in violation of federal regulation, is relevant to a determination of whether the railroad's conduct was willful or wanton.

3. This section of the Restatement speaks in terms of whether the violation of a statute constitutes "reckless disregard" for the lives of others. "Reckless disregard" and "willful or wanton" are used interchangeably.

"means characterized by extreme reckless-ness *and utter disregard for the rights of others.*" *Id.* at 320 [emphasis supplied]. Thus, by the omission or recklessness, it must be foreseeable to a reasonable person that the conduct will result in harm. If the harm occasioned was not foreseeable, the violation of the statute may constitute neg-ligence, but cannot constitute wanton or willful misconduct.

In the instant case, B & O traversed the area of the tracks on which the injury occurred with a headlight capable of illumi-nating less than the distance prescribed by statute. However, the area of the tracks was an area on which the railroad could not have expected to find human activity (other than railroad personnel). The area of the tracks *was not an intersection; nor was it* near a train yard, or area where children, employees, licensees, or trespassers were known to play or otherwise frequent. The record indicates to the contrary, that be-cause of the location of the tracks, there was no reason to anticipate human activity of any sort. This case is distinguishable from the circumstances in *Daisey v. Coloni-al Parking, Inc.,* 118 U.S.App.D.C. 31, 331 F.2d 777 (1963), on which appellant relies.

In *Daisey, supra,* while walking in a pub-lic alley plaintiff had her attention diverted which caused her to wander onto a portion of land adjacent to the alley. Defendant rented this land and used it as a parking lot. Plaintiff, a trespasser, tripped over a chain which was part of the parking area under defendant's control, and was injured. While not reaching the issue of defendant's liability to the plaintiff, the court stated that when trespassers are reasonably ex-pected, landowners may have a duty to exercise reasonable care to keep trespassers out or otherwise protected. *Id.* at 34, 331 F.2d at 780.

The critical factors in *Daisey* were the known human activity and the layout of the land (parking lot adjacent to the alley with no clear distinguishing mark). In the case at bar, there was no known human activity. Argument can be made that one might reasonably expect human activity when rid-ing through any densely populated city as compared to a rural town in an isolated setting. To stop our analysis at this point, however, would be to ignore the second and equally important factor considered by the court in *Daisey,* to wit, the character and layout of the terrain in question.

In all of the cases cited by the parties, where the conduct on the part of the de-fendant amounted to wanton or willful mis-conduct, the accident occurred at railroad crossings, train yards, or other locations which would indicate the presence of others. In the instant case, there are no such facts. Here, the railroad tracks are separated from a nine-lane freeway by a wall and a guardrail. Absent any indication of human activity or reason to foresee persons on the tracks, the violation of the statute cannot, without more, create a jury question on the standard of willful or wanton misconduct which will enable a trespasser to recover.

Finding no error in the trial court's rul-ing, we affirm.

*Affirmed.*