# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued October 20, 2023      Decided December 29, 2023

No. 22-7154

CAMEROON WHITERU, INDIVIDUALLY AND AS PERSONAL
REPRESENTATIVE OF THE ESTATE OF OKIEMUTE C. WHITERU
AND AGNES WHITERU,
APPELLANTS

v.

WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY,
APPELLEE

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:15-cv-00844)

---

*Andrew D. Levy* argued the cause for appellants. With him on the briefs were *Andrew D. Freeman*, *Kobie A. Flowers*, *Lauren A. DiMartino*, *Michael R. Abrams,* and *Louis G. Close, III.*

*Pratik A. Shah* argued the cause for appellee. With him on the brief were *Michael Weisbuch*, *Anthony T. Pierce*, and *Caroline L. Wolverton*.

Before: HENDERSON and GARCIA, *Circuit Judges*, and GINSBURG, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: This is the second time this case has been before our court. *See Whiteru v. Washington Metro. Area Transit Auth.* (*Whiteru I*), 25 F.4th 1053 (D.C. Cir. 2022). Appellants are the parents and the estate of Okiemute C. Whiteru, who suffered severe and ultimately fatal injuries after falling from the passenger platform at the Judiciary Square metro station into a narrow trough that houses lighting and electrical equipment. Appellants brought negligence and wrongful death claims against the Washington Metropolitan Area Transit Authority (WMATA), which operates the Judiciary Square station, alleging that WMATA breached its common carrier duty to render aid to Whiteru. At issue in *Whiteru I* was whether Whiteru's conceded contributory negligence prevented his estate from recovering from WMATA. We held that contributory negligence did not preclude common carrier liability for failure-to-aid. *Whiteru I*, 25 F.4th at 1059. After remand, WMATA again moved for summary judgment, arguing for the first time that the Whiterus could not recover because Whiteru became a trespasser when he fell backward from the platform over a retaining ledge he was apparently sitting on. If Whiteru was a trespasser, WMATA owed him only the duty to refrain from intentional, willful or wanton injurious conduct. Moreover, absent the special relationship between common carrier and passenger, contributory negligence would again come into play. Relying on Section 329 of the Restatement (Second) of Torts (regarding trespassers), the district court again granted WMATA summary judgment. The Whiterus appealed.

We conclude that Whiteru's status—passenger or trespasser—which in turn determines WMATA's duty of care is an uncertain question of District of Columbia law for which there is no controlling precedent from the District of Columbia

Court of Appeals (D.C. Court of Appeals). We therefore certify the question to the D.C. Court of Appeals.

## I.  Facts Relevant to Certification

Our earlier opinion recites some of the facts underlying this case. *See Whiteru I*, 25 F.4th at 1055–56. To facilitate the D.C. Court of Appeals' review, we recount them here in more detail.

Around 12:45 a.m. on October 19, 2013, Whiteru disembarked a train operated by WMATA at the Judiciary Square metro station. He was noticeably intoxicated. At 1:07 a.m., he approached the kiosk on the station's mezzanine level and spoke with Rhonda Brown, the station manager, who helped him process his SmarTrip card. He then descended to the station platform via an escalator that was in stair mode. He stumbled over the last few steps and fell to the floor of the station platform, where he lay for over three minutes. He got up and attempted to lean against or sit on the narrow ledge (approximately three feet high and four inches wide) at the edge of the platform opposite the train tracks. On the other side of the ledge and several feet below the platform is an uncovered trough that houses electrical and lighting equipment.

At about 1:15 a.m., Whiteru fell backward over the ledge, landing at the bottom of the trough. As a result of the impact, he fractured his C-5 vertebra which immobilized him and compromised his breathing. Appellants' medical experts opined that Whiteru remained conscious and would have been able to call for help over the next three to four hours. Whiteru's ability to breathe gradually waned due to his damaged phrenic nerve, which damage was caused by the spinal fracture. He ultimately died from asphyxiation. His body was discovered four days later after a metro passenger brought it to the attention of the station manager.

WMATA's operating procedure required the station manager on duty to perform visual inspections of the platform at 1:30 a.m., 2:30 a.m. and 3:15 a.m. It is disputed whether Brown, the Judiciary Square station manager on duty that night, in fact performed the inspections and whether the inspections included looking behind the ledge and into the trough. Video surveillance footage captured Whiteru's fall into the trough. It is undisputed that Whiteru would have survived if he had been timely discovered. It is also undisputed that Whiteru was a passenger while he was on the station platform. The question is whether Whiteru became a trespasser by falling backward into the trough, a non-public area.

## II. Passenger Versus Trespasser Status

The District of Columbia (District) has adopted Section 314A of the Restatement (Second) of Torts, which states that a common carrier like WMATA owes a duty to its passengers "to take reasonable action (a) to protect them against unreasonable risk of physical harm, and (b) to give them first aid after it knows or has reason to know that they are ill or injured, and to care for them until they can be cared for by others." Restatement (Second) of Torts § 314A(1)(a)–(b) (1965); *see McKethean v. WMATA*, 588 A.2d 708, 712 (D.C. 1991). Section 314A, titled "Special Relations Giving Rise to Duty to Aid or Protect," carves out an exception to the Section 314 general rule that, absent special circumstances, awareness of another's peril imposes no duty to take action to aid or protect him. Restatement (Second) of Torts § 314; *id.* § 314A cmt. b; *accord McKethean*, 588 A.2d at 712 ("A common carrier has no special duty to non-passengers.").

> The rules stated in [Section 314A] apply only
> where the relation exists between the parties,
> and the risk of harm, or of further harm, arises

in the course of that relation. A carrier is under no duty to one who has left the vehicle and ceased to be a passenger, nor is an innkeeper under a duty to a guest who is injured or endangered while he is away from the premises. Nor is a possessor of land under any such duty to one who has ceased to be an invitee.

Restatement (Second) of Torts § 314A, cmt. c.

Section 329 of the Restatement, which the District has also adopted, defines "trespasser" as "a person who enters or remains upon land in the possession of another without a privilege to do so created by the possessor's consent or otherwise." Restatement (Second) of Torts § 329; *Firfer v. United States*, 208 F.2d 524, 528 (D.C. Cir. 1953) (adopting definition of § 329). An invitee may become a trespasser by exceeding the scope of his invitation. *See Firfer*, 208 F.2d at 529 ("When Mr. Firfer left that portion of the Monument grounds which is set aside for the public, he exceeded the scope of his license and became a trespasser[.]").

Our district court has consistently held that under District tort law, "fare-paying customers in a subway station become trespassers when they leave the platform and enter the tracks." *Hines v. WMATA*, 2022 WL 392306, at *5 (D.D.C. Feb. 9, 2022); *see also Coulston v. WMATA*, 2020 WL 1236563, at *3 (D.D.C. March 13, 2020); *Johnson v. WMATA*, 764 F. Supp. 1568, 1572–73 (D.D.C. 1991); *Whitaker v. WMATA*, 1984 U.S. Dist. LEXIS 16712, at *12, *14 (D.D.C. May 14, 1984). These decisions dovetail with *Firfer*'s holding that an invitee may become a trespasser when he exceeds the scope of his invitation. In all of these cases, the plaintiff sought to recover for serious injury or death that resulted from his having been struck by a train operating on the tracks after he voluntarily

entered the tracks. In none of them did the plaintiff seek to recover for the exacerbation of initial injuries caused by his *involuntary* entry onto the tracks; and none involved an area immediately adjacent to the portion of the station platform opposite the tracks.

Our reading of District negligence precedent involving the condition or use of land leads us to conclude that whether the plaintiff's unauthorized and unprivileged entry was voluntary is immaterial to his legal status as a trespasser. *Copeland v. Balt. & O.R. Co.*, 416 A.2d 1, 2–3 (D.C. 1980). Like the passenger-turned-trespasser cases cited above (*i.e.*, *Whitaker* and its progeny), *Copeland* involved a plaintiff who sought to recover for injuries resulting from his being struck by a train. *See id.* Unlike the plaintiffs in the passenger-turned-trespasser cases, whose entry onto train tracks was a volitional act on their part, Copeland's entry onto the tracks was involuntary—one or more unknown persons took him from his front porch, drove him to a remote segment of the railroad tracks and placed him on the tracks while he was semiconscious. *Id.* at 2, 4. *Copeland* is regularly cited in passenger-turned-trespasser cases that reject a plaintiff's argument that his entry onto the tracks was less than intentional—for example, the result of confusion or mental illness—and therefore he was not a trespasser.

There are substantial differences between those cases and this one. At no relevant time had Copeland been a passenger of the defendant railroad company. The starting point of the involuntary movement that ultimately placed him on the railroad tracks was his front porch. Here, the starting point of Whiteru's involuntary fall from the station platform ledge took place *on* the station platform—where all agree he was a

WMATA passenger.[1]  Second, the *Copeland* and passenger-turned-trespasser plaintiffs sought to recover for their immediate injuries, whereas Whiteru seeks to recover only for the exacerbation of his original falling injuries—an exacerbation attributable to WMATA's failure to aid him. Moreover, in neither *Copeland* nor the passenger-turned-trespasser cases did the plaintiffs' injuries result from their entry onto the tracks but rather from their being struck by the train passing over them.  In other words, the injury for which plaintiffs sought to recover was separate and distinct from their trespass.  By contrast, no intervening cause separates Whiteru's immediate injuries (which triggered his need for assistance) from his involuntary fall, which WMATA seeks to characterize as a trespass.  Finally, we are skeptical that treating entry onto train tracks as trespass no matter the plaintiff's state of mind applies to Whiteru's fall from a ledge located on the portion of the platform *opposite* the train tracks. *Cf. Whitaker*, 1984 U.S. Dist. LEXIS 16712, at *12 ("It must be apparent to any reasonable person that a gate which leads into the subway tunnel is not to be used as a public exit.").  District precedent offers scant guidance in determining whether a plaintiff who involuntarily falls from a passenger area into an area not held open (except literally) to passengers remains a passenger or becomes a trespasser.

In concluding that Whiteru became a trespasser when he fell into the trough, the district court focused on conflicting scenarios attached to Sections 329 and 314A of the Restatement. *Whiteru v. WMATA*, 636 F. Supp. 3d 107, 112–15 (D.D.C. 2022).  Section 329's illustration, which is based on *Frederick v. Phila. Rapid Transit Co.*, 10 A.2d 576 (Pa. 1940), states:

---

[1] Indeed, had he fallen forward, he would have unquestionably remained a passenger.

> Without any negligence on his part A, standing on the platform of a subway station of the X Company, slips and falls onto the tracks. While there he is run over by the train of X Company, and injured. A is a trespasser, and the liability to him is determined by the rules stated in §§ 333 and 336, notwithstanding the accidental character of his intrusion.

Restatement (Second) of Torts § 329 cmt. c, illus. 1.

The district court found that the foregoing illustration "essentially describes this case." *Whiteru*, 636 F. Supp. 3d at 113. We acknowledge the similarities but note that the *Frederick* plaintiff sought to recover for the injuries caused by the train passing over him, not for the defendant railroad's failure to rescue him from the tracks. Indeed, it is unlikely the railroad would have had an opportunity to rescue him from the tracks because he had "slipped from the platform into the pathway of the train, which meanwhile had started, but he fell at a point so immediately in front of it as not to be within the motorman's range of vision." *Frederick*, 10 A.2d at 577.

Section 314A's illustration, based on *Yazoo & M.V.R. Co. v. Byrd*, 42 So. 286 (Miss. 1906), states:

> A, a passenger on the train of B Railroad, negligently falls off the train, and is injured. The train crew discover that he has fallen off, but do nothing to send aid to him, or to notify others to do so. A lies unconscious by the side of the track in a cold rain for several hours, as a result of which his original injuries are seriously aggravated. B Railroad is subject to liability to A for the aggravation of his injuries.

Restatement (Second) of Torts § 314A cmt. f, illus. 1.

The district court considered this illustration less relevant in large part because *Yazoo* did not consider the issue of the plaintiff's potential "trespass" by virtue of his falling by the side of the track. *See Whiteru*, 636 F. Supp. 3d at 114–15. But a common carrier's duty to aid attaches only if the plaintiff *is* a passenger. Because A was a passenger *when it mattered*, that is, when he fell from the train, B was liable for the aggravation of A's injuries caused by its failure to render aid.

In sum, we believe this case presents an issue of first impression regarding District tort law. Does the special relationship between common carrier and passenger survive a passenger's involuntary backward fall from a station platform into a trough adjacent to the station platform (which trough passengers are not invited to enter) so that the common carrier is obliged to render aid provided it knows or has reason to know of his injury? Or does the fall from the station platform, no matter its involuntary character, sever the relationship and render the passenger a trespasser so that the common carrier owes him only the duty to refrain from intentional, willful or wanton injurious conduct? Faced with differing Restatement sections that are respectively silent as to each other and no case law on point, we refer the question to the D.C. Court of Appeals to define the boundary between trespasser and passenger status in this case.

### III. Certified Question

Pursuant to D.C. Code § 11–723(a), the D.C. Court of Appeals may answer a question of District law certified to it by this court "which may be determinative of the cause pending . . . and as to which it appears . . . there is no controlling precedent in the decisions of the District of Columbia Court of Appeals." We have certified questions to

the D.C. Court of Appeals when it appears that District law is "genuinely uncertain" and the questions are of "extreme public importance." *Sturdza v. United Arab Emirates*, 281 F.3d 1287, 1303 (D.C. Cir. 2002) (quoting *Dial A Car, Inc. v. Transp., Inc.*, 132 F.3d 743, 746 (D.C. Cir. 1998)); *see also, e.g.*, *Akhmetshin v. Browder*, 993 F.3d 922, 928 (D.C. Cir. 2021).

For the foregoing reasons, we conclude that the law of the District of Columbia is genuinely uncertain as to whether a passenger's involuntary fall from a station platform into an adjacent non-public area renders him a trespasser. We also believe that the question posed by this case is of extreme public importance. It is likely to recur, given that WMATA's daily ridership is in the hundreds of thousands. *See* Metrorail Ridership Summary, WMATA, https://perma.cc/73GH-P2LY. In fact, in the decades since the D.C. Court of Appeals issued an opinion offering material guidance in this area, this Court and our district court have considered this case and cases raising related issues several times. *See supra*, slip op. at *5–6. Because tort liability questions often entail not only legal analysis but "policy decision[s]" about how "society would be best served," *Luck v. Baltimore & Ohio R.R. Co.*, 510 F.2d 663, 667 (D.C. Cir. 1974), we believe this case calls for the D.C. Court of Appeals' "exercise of judgment." *See McKesson v. Doe*, 592 U.S. 1, 5–6 (2020). We therefore certify the following question to the D.C. Court of Appeals:

> Under District of Columbia law, and under the facts described, may a plaintiff who, as a passenger located on a common carrier's station platform, involuntarily falls backward from the station platform into a non-public area immediately adjacent to the station platform, and from the impact of such fall sustains immobilizing injuries, recover for the

exacerbation of those injuries attributable to the common carrier's failure to aid him, if the common carrier knew or had reason to know of his injuries?

Appended hereto are the briefs and portions of the record provided by the parties to this appeal as well as our decision in *Whiteru I.*

*So ordered.*