# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

**No. 22-7154**                                          **September Term, 2025**

FILED ON: FEBRUARY 27, 2026

CAMEROON WHITERU, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF
OKIEMUTE C. WHITERU AND AGNES WHITERU,
            APPELLANTS

v.

WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY,
            APPELLEE

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:15-cv-00844)

---

Before: HENDERSON and GARCIA, *Circuit Judges*, and GINSBURG, *Senior Circuit Judge**

## J U D G M E N T

This controversy between the Estate of Okiemute Whiteru and the Washington Metropolitan Area Transit Authority (WMATA) stems from the fatal injuries Whiteru suffered when he fell from a low wall at Washington, D.C.'s Judiciary Square Metro Station.[1] Currently before the Court is the Estate's appeal of the district court's decision granting summary judgment to WMATA. *See Whiteru v. Washington Metro. Area Transit Auth.*, 636 F. Supp. 3d 107 (D.D.C. 2022). For the following reasons, we vacate the district court's decision and remand the case to the district court.

The district court granted summary judgment to WMATA on two grounds. It first held that Whiteru became a trespasser when he fell backward into a non-public area of the Metro Station. The district court concluded that, because District of Columbia law does not impose upon a common carrier like WMATA a duty to aid a trespasser, the Estate's claim failed. *Id.* at 111–15.

---

* A separate dissenting statement by Senior Circuit Judge Ginsburg is attached.

[1] The facts giving rise to this tragedy are discussed at length in our two previous opinions. *See Whiteru v. Washington Metro. Area Transit Auth.*, 25 F.4th 1053, 1055–56 (D.C. Cir. 2022); *Whiteru v. Washington Metro. Area Transit Auth.*, 89 F.4th 166, 168–69 (D.C. Cir. 2023).

Alternatively, it held that even if WMATA owed and breached a duty to aid Whiteru, his contributory negligence would bar recovery. *Id.* at 115–17. The Estate appealed.

We determined that Whiteru's appeal presented "an uncertain question of District of Columbia law for which there is no controlling precedent from the District of Columbia Court of Appeals." *Whiteru v. Washington Metro. Area Transit Auth.*, 89 F.4th 166, 168 (D.C. Cir. 2023); *see S & G Inv., Inc. v. Home Fed. Sav. & Loan Ass'n*, 505 F.2d 370, 379 (D.C. Cir. 1974) (explaining that "the District of Columbia Court of Appeals" is "the authoritative expositor of local law in the District of Columbia"). We therefore certified the following question to that court:

> Under District of Columbia law. . . may a plaintiff who, as a passenger located on a common carrier's station platform, involuntarily falls backward from the station platform into a non-public area immediately adjacent to the station platform, and from the impact of such fall sustains immobilizing injuries, recover for the exacerbation of those injuries attributable to the common carrier's failure to aid him, if the common carrier knew or had reason to know of his injuries?

*Whiteru*, 89 F.4th at 168.

The District of Columbia Court of Appeals answered our question in the affirmative. *Whiteru v. Washington Metro. Area Transit Auth.*, 346 A.3d 1188, 1192 (D.C. 2025). It explained that under District of Columbia law, a passenger who enters "into a non-public area . . . will generally become a trespasser." *Id.* It then held that "[i]f the common carrier knows or has reason to know of the trespasser's presence and injured, trapped, or otherwise imperiled status, the common carrier has both a duty of ordinary care to not cause harm to the trespasser and a duty to provide reasonable affirmative aid." *Id.*[2] In view of this holding, the district court's grant of summary judgment to WMATA based on Whiteru's status as a trespasser applied an incorrect legal standard.

Whether we could nevertheless affirm based on the district court's alternative holding that Whiteru's contributory negligence bars recovery remains. The district court framed this holding as "independent" of its holding that WMATA had no duty to aid Whiteru as a trespasser. *Whiteru*, 636 F. Supp. 3d at 115. We decline to reach the contributory negligence issue in view of our remand.

**ORDERED** and **ADJUDGED** that the district court's order granting summary judgment in favor of WMATA be vacated.  It is

**FURTHER ORDERED** and **ADJUDGED** that the case be remanded to the district court for further consideration in light of the District of Columbia Court of Appeals' above-referenced decision.

---

[2] The District of Columbia Court of Appeals also held that the less stringent "'should have known' standard is not sufficient" to trigger the common carrier's duty to aid a known trespasser. *Whiteru*, 346 A.3d at 1203.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate until seven days after resolution of any timely petition for rehearing or rehearing en banc. See Fed. R. App. P. 41(b); D.C. Cir. R. 41.

**<u>Per Curiam</u>**

**FOR THE COURT:**
Clifton B. Cislak, Clerk

BY:    /s/
Daniel J. Reidy
Deputy Clerk

GINSBURG, *Senior Circuit Judge*, dissenting:

I would affirm the district court's grant of summary judgment in favor of WMATA without remanding for further proceedings. A common carrier owes a duty to a trespasser if it "knows or has reason to know of the trespasser's presence and injured, trapped, or otherwise imperiled status." *Whiteru v. WMATA*, 346 A.3d 1188, 1192 (D.C. 2025). At oral argument in this court, the Whiterus conceded that WMATA did not have actual knowledge of Whiteru's presence as a trespasser or his injured status. In order to survive summary judgment, therefore, the Whiterus needed to produce "evidence on which the jury could reasonably find" that WMATA had reason to know of Whiteru's presence and status. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). According to the D.C. Court of Appeals, this means the Whiterus needed to produce evidence from which a jury could infer that WMATA had "knowledge of facts that would give rise to the knowledge or belief that there [was] a trespasser" in the station. *Whiteru*, 346 A.3d at 1203.

The Whiterus have not done so. As the district court noted more than eight years ago when denying WMATA's first motion for summary judgment, the Whiterus' theory of negligence did not depend upon whether WMATA had reason to know of Whiteru's status. In that motion, WMATA had asserted that "its employees had no reason to know Whiteru was injured." *Whiteru v. WMATA*, 258 F. Supp. 3d 175, 191 (D.D.C. 2017). The district court dismissed that argument, explaining that "this contention distorted Plaintiffs' theory of liability in light of the record evidence developed during discovery." *Id.* (cleaned up). As the district court further explained:

> The critical issue of fact, as Plaintiffs have presented it, is whether [WMATA's station manager] Rhonda Brown performed inspections of the train platform on the date in question, and if so, whether she performed those inspections reasonably. Plaintiffs' theory does not rely on Brown's *knowledge* of Whiteru's injury; indeed, quite to the contrary, Plaintiffs acknowledge that Brown did not know about Whiteru's condition, but maintain that she *would have* discovered him but for her failure to perform adequate inspections.

*Id.* (cleaned up); *see also id.* at 192 n.11 (describing Brown's "alleged breach of the duty to inspect" as "the linchpin of Plaintiffs' negligence claim" and "the key disputed fact").

As the district court observed, the Whiterus relied upon the "should have known" theory "in light of the record evidence developed during discovery." *Id.* at 191. For good reason: No evidence indicated that WMATA had reason to know of Whiteru's presence or status. Accordingly, the Whiterus have offered a consistent theory throughout this case: The station manager was required to perform walk-through inspections and check the parapet area, but either she failed to perform the inspections on the night of Whiteru's fall or she performed them negligently.

Now that the D.C. Court of Appeals has rejected this "should have known" theory, *see Whiteru*, 346 A.3d at 1203, the question becomes whether any facts would allow a jury to infer that WMATA had reason to know of Whiteru's presence and status. The answer is no. To be sure,

4

the Whiterus argued long ago during a pretrial conference that perhaps the station manager heard Whiteru call for help after he fell. Then-Judge Jackson quickly disposed of this argument, calling it "speculative" and "many, many miles away from the record" — even going so far as telling counsel she was "very worried about [their] case." Any argument that the station manager heard Whiteru, therefore, is an insufficient basis for surviving summary judgment.

Nor should we allow the Whiterus' claims to proceed based upon the surveillance footage of Whiteru's fall. The existence of the video alone would not allow a jury to find that WMATA knew or had reason to know about Whiteru's presence and status. If it were, then WMATA would effectively have a duty to "keep a lookout" for trespassers on the surveillance footage — a theory which the D.C. Court of Appeals rejected. *Id.* The Whiterus needed to produce some evidence from which a jury could conclude the video was "within the knowledge of" WMATA — here meaning within the knowledge of the station manager on duty that night. *Id.* They have not done so. In fact, the Whiterus did not even cite the surveillance footage in their briefs before this court or the D.C. Court of Appeals as evidence that WMATA had reason to know or should have known about Whiteru's presence and status.[*]

In sum, the Whiterus have not offered even a "scintilla of evidence" that WMATA had reason to know of Whiteru's status. *Liberty Lobby*, 477 U.S. at 252. Although we generally allow district courts to consider issues in the first instance, we need not remand a case when "[a] full record is before us, devoid of issues of disputed material fact." *Indep. Bankers Ass'n of Am. v. Heimann*, 613 F.2d 1164, 1167 (D.C. Cir. 1979); *see also Latif v. Obama*, 677 F.3d 1175, 1205 (D.C. Cir. 2011) (Henderson, J., concurring) (stating that "remand is unnecessary" when "the record permits only one resolution of the factual issue" (cleaned up)).

The Whiterus initiated this litigation more than a decade ago, and the parties have detailed their respective theories of the case — and the evidence supporting those theories — through three rounds of summary judgment briefing, two rounds of briefing in this court, and their briefs in the D.C. Court of Appeals. The record provides an ample basis for us to determine whether the "reason to know" standard was met here. Because the record would not permit a reasonable jury to find that WMATA had reason to know of Whiteru's presence and status, a remand is "unduly wasteful" of the district court's time, *Indep. Bankers Ass'n*, 613 F.2d at 1167, and the defendant's resources.[**]

---

[*] Furthermore, in order for a jury to find that WMATA had reason to know of Whiteru based upon the surveillance footage, the jury would need to believe the station manager saw Whiteru's fall on the monitor and took no action. That would seem to surpass mere negligence and amount to "intentional, willful, or wanton misconduct" — another theory which the Whiterus did not pursue. *See Copeland v. Balt. & Ohio R.R. Co.*, 416 A.2d 1, 2-4 (D.C. 1980).

[**] For similar reasons, I would not delay resolution of this case on the ground that the parties have not briefed their respective positions after the decision of the D.C. Court of Appeals. "We may affirm the grant of summary judgment on any ground supported by the record, even if it differs from the theory applied by the district court, provided that the opposing party has had a fair opportunity to dispute the facts material

5

This tragic case has presented many difficult questions during its decade-long course. The decision of the D.C. Court of Appeals, however, provides a clear path to its conclusion. The Whiterus have not presented evidence from which a reasonable jury could conclude that WMATA had reason to know of Whiteru's presence and status after he fell. I would therefore affirm the district court's judgment without further ado.

---

to that ground." *Queen v. Schultz*, 747 F.3d 879, 884 (D.C. Cir. 2014) (cleaned up). The Whiterus had an opportunity to respond to the "reason to know" standard multiple times in this litigation. In its briefs before this court and the D.C. Court of Appeals, WMATA argued that even if a common carrier owes a duty to a known trespasser, Whiteru was an unknown trespasser. As part of that argument, WMATA invoked the "reason to know" standard and explained that "reason to know" means "specific knowledge that leads to the inference that the trespasser is actually present." Appellee's Br. 20 (cleaned up). The Whiterus had an opportunity to respond by pointing to specific facts within the knowledge of the station manager that gave her reason to know of Whiteru's presence and status, but they failed to do so.