**James V. LACY, Janice P. Lacy, Appellants,**

v.

**SUTTON PLACE CONDOMINIUM ASSOCIATION, INC., and Legum & Norman Realty, Inc., Appellees.**

**No. 94–CV–638.**

District of Columbia Court of Appeals.

Argued June 13, 1995.

Decided Oct. 31, 1996.

---

L. Palmer Foret, Washington, DC, for appellants.

Joseph Michael Hannon, Jr., for appellees.

Before WAGNER, Chief Judge, TERRY, Associate Judge, and MACK, Senior Judge.

WAGNER, Chief Judge:

Appellants, James Lacy and Janice Lacy, appeal from a grant of summary judgment in favor of appellees, Sutton Place Condominium Association, Inc. (Sutton) and Legum & Norman Realty, Inc. (Legum). The Lacys filed a suit for damages for personal injuries sustained by Mr. Lacy in a fall through the ceiling in the condominium unit which he and his wife leased from the unit owner, Dr. Martha Mann. Janice Lacy, Mr. Lacy's wife, claimed loss of consortium. In addition to Dr. Mann, the Lacys named as defendants, Jane and Steven Silberberg, the prior owners of the unit, Sutton, the condominium association, and Legum, the condominium association's management company. After the trial

court granted the motion of Sutton and Legum for summary judgment, the Lacys dismissed the case against Mann and the Silberbergs in order to appeal immediately the grant of summary judgment in favor of Sutton and Legum. The Lacys argue that the trial court erred in granting summary judgment for Sutton and Legum because there are genuine issues of material fact in dispute which preclude judgment as a matter of law. The Lacys contend that Sutton and Legum had statutory, contractual and common law duties to them to maintain in a safe condition the common area where Mr. Lacy fell, which they failed to discharge as a result of which Mr. Lacy was injured. They contend that Sutton & Legum had a duty to exercise reasonable care "regardless of whether Lacy was a trespasser." The Lacys also contend that the trial court erred in denying their motion to amend the complaint to add a claim for punitive damages. We affirm.

## I.

The following facts appear not to be in dispute. On June 29, 1992, the date of the accident, the Lacys were tenants in a condominium unit at Sutton Place Condominiums located at 3207–B Sutton Place, N.W., in the District under a lease entered in November 1990 with the unit owner, Dr. Mann. Sutton was the condominium association for the condominium, and Legum was its managing agent. On that date, the Lacys were preparing to move out of the condominium. Mr. Lacy entered the attic area by climbing a set of pulldown stairs installed in the ceiling of the upper level of the unit. He entered the attic by walking across a 4' × 8' sheet of 1/2" plywood which was laid across the 2' × 4' lumber that formed the lower cord of the roof trusses. Upon Mr. Lacy's second trip to the storage area, he took a few steps on the plywood, paused, and heard a slight crack before falling through the ceiling insulation and sheetrock below, onto a wrought iron railing inside the apartment unit. The fall was caused by the failure of the 4' × 8' sheet of 1/2" plywood upon which Mr. Lacy had been standing.

The ceiling opening and the pulldown stairs in the unit had been installed in 1979 by the original unit owners, the Silberbergs. They had arranged to have attic storage space built in the condominium in June 1979 by George Tanner of Gaithersburg, Maryland. The construction of the attic was prohibited by the governing documents of the condominium, and the Silberbergs did not obtain the authorization of Sutton and Legum before installing the storage area. According to the Declaration of the Condominium, the attic area, comprising the drywall of the ceiling of the unit at 3207–B and all physical structures above that plane, are considered common elements of the condominium, and therefore are not to be used by unit owners. On July 16, 1984, the Silberbergs sold the condominium to Martha Mann. On November 11, 1990, Mann rented the unit to the Lacys.

In January 1987, Sutton's employee observed that unit 3207–B had an attic access. In January 1990, Sutton and Legum hired an architect to inspect a similar attic access in another unit. The architect advised Sutton and Legum that the roof trusses were not designed structurally for bearing the weight of stored material. The architect informed them that the weight of the stored items could damage the trusses, and therefore, the attic could not be used for storage. In turn, Sutton and Legum informed Dr. Mann and all other unit owners that the roof trusses would not support long term storage and that they must cease all use of the attics, to which access was prohibited by the Rules and Regulations and the Declaration of the Condominium. On August 16, 1990, the Board of Directors of Sutton issued a notice to all unit owners stating that all items in the attic storage areas should be removed immediately and that no one should use this area in the future. The notice stated that any continued use of this area would be at the sole risk of the unit owner who would be responsible for any damage or injury resulting from the use of the attic space. The Bylaws of Sutton Place require all unit owners to comply with such directives of the Board of Directors. Sutton's Rules and Regulations expressly prohibit "penetration by an Owner or Resident of the walls, floor, ceiling ... beyond the boundaries of the unit as they are de-

fined in the Condominium Declaration."[1] The Bylaws of Sutton Place also expressly prohibit storage in the common elements. The attic space is a common element as defined in the condominium documents. The Lacys concede that the attic access, pulldown stairs, and plywood flooring, which Dr. Mann maintained and controlled, were prohibited by the Rules and Regulations of the Condominium. The Lacys' lease with Mann incorporated by reference the Rules and Regulations of the Condominium. The Lacys admit that they received and read the Rules and Regulations, but deny that they received or knew of the Bylaws of Sutton Place. They also deny that Mann gave them a copy of the memorandum from Sutton concerning the condition of the attic and the owner's liability for its use.

## II.

The Lacys argue that Sutton and Legum had control over the attic space as a common area and owed them a duty to keep it safe. They contend that, at the least, disputed factual issues preclude a determination of the question as a matter of law. Sutton and Legum argue that the undisputed facts show that Mr. Lacy was a trespasser to whom it owed no legal duty except to refrain from wilful and wanton conduct which would cause injuries. We address first the Lacys' status because "[t]he duty owed and the degree of care required to be exercised by the landowner in turn depend[s] upon the status of the injured person at the time of the accident." *Firfer v. United States,* 93 U.S.App. D.C. 216, 218, 208 F.2d 524, 527 (1953).[2]

▮ A trespasser is one who enters or remains upon property in the possession of another without the consent of the possessor. *Firfer, supra,* 93 U.S.App. D.C. at 219, 208 F.2d at 528 (citing RESTATEMENT, TORTS § 329 (1934)). Here, the attic area from which Lacy fell was a statutory common element; however, the governing documents of the condominium prohibited its penetration and use by anyone. "The condominium instruments, including the bylaws ..., are a contract that governs the legal rights between the Association and unit owners." *Johnson v. Fairfax Village Condo. IV,* 548 A.2d 87, 91 (D.C.1988). The bylaws of the condominium association are a " 'form of private law making,' " and individuals who choose this form of ownership, by agreement, forego some of the traditional incidents of ownership. *Id.* (quoting *Ryan v. Baptiste,* 565 S.W.2d 196, 198 (Mo.Ct.App.1978)). Except as otherwise stated in the condominium instruments or by law, the condominium association has the power to regulate the use of the common elements of the condominium. D.C.Code § 45–1848(a)(6) (1996); *see also Johnson v. Hobson,* 505 A.2d 1313, 1317 (D.C.1986) (The condominium's governing body has broad authority to regulate affairs of the development and to adopt reasonable rules).

▮ It is not disputed that the condominium association here acted within that power in prohibiting access to the attic space. The Lacys, by contract, agreed to be bound by the Rules and Regulations governing the condominium. Thus, they were not authorized to enter the attic space; therefore, they have the status of trespassers. A trespasser "cannot hold the landowner to liability based upon negligence in failing to make the premises safe." *Firfer, supra,* 93 U.S.App. D.C. at 219, 208 F.2d at 528 (citations omitted). Recovery is allowed only for "intentional, wanton or willful injury or the maintenance of a hidden engine of destruction." *Id.* The record discloses no facts supportive of such a claim.

▮ The Lacys argue that Mr. Lacy was a licensee by invitation, a status which

---

1. The Condominium Declaration describes the upper boundary of a residential unit as "a horizontal plane (or planes), the elevation of which coincides with the lower surface of the unfinished concrete or roof truss bearing, thereof, to include any ceiling drywall within the condominium unit."

2. In *Firfer,* the court distinguished between the duties owed by a landowner to licensees, invitees, and trespassers. *Id.* The distinct standards of care for licensees and invitees under the common law no longer exist in this jurisdiction. *Sandoe v. Lefta Assocs.,* 559 A.2d 732, 742 (D.C. 1988). The standard of care for persons *lawfully* upon the premises is reasonable care under the circumstances. *Id.* (emphasis added).

holds a possessor of land to a standard of reasonable and ordinary care. *See Firfer, supra,* 93 U.S.App. D.C. at 218, 208 F.2d at 527. That status refers to "persons invited upon the land not for the benefit of the landowner but by him either by some affirmative act or by appearances which would justify a reasonable person in believing that such landowner (or occupant) had given his consent to the entry of the particular person or of the public generally." *Id.* No action by Sutton or its management agent, Legum, has been pointed out which creates the appearance which would justify the Lacy's belief that Sutton and Legum had acquiesced in the use of the attic space. Lacy contends that permission was obtained from his lessor, Mann. However, Dr. Mann had no authority to consent to the use of the space in contravention of the governing documents of the condominium, including the Rules and Regulations, which formed a part of the Lacys' contract. Moreover, the Lacys agreed in writing to adhere to the rules and regulations of the condominium and any amendments thereto. Viewed in the light most favorable to the Lacys,[3] the undisputed facts show that Lacy believed that he was authorized to use the attic area because of the statements of his landlord, Dr. Mann, and the appearance of the attic area which was created by the Silberbergs. None of them had the authority to consent to the prohibited use. A mistake of fact that someone without authority was authorized to consent does not alter Mr. Lacy's status as a trespasser against the rights of the one lawfully in possession. *See* RESTATEMENT (SECOND) OF TORTS, § 164 (1965).

The Lacys contend that, even if Mr. Lacy was a trespasser, they can recover for Sutton's and Legum's breach of duty to them. That position is contrary to the rule that a trespasser can recover only for willful and wanton conduct or hidden defects. *Washington Metro. Area Transit Auth. v. Ward,* 433 A.2d 1072, 1074 (D.C.1981) (recognizing *Fir-fer, supra,* as continuing to state the law regarding a landowner's liability to trespassers); *Holland v. Baltimore & Ohio R.R., Co.,* 431 A.2d 597, 601 (1981) (en banc). Willful and wanton conduct by Sutton and Legum was not alleged or shown in opposition to the motion for summary judgment.[4]

■ The Lacys further claim that Sutton and Legum can be held liable because it was foreseeable that Lacy would use the attic, and they had knowledge of the dangerous condition. *Johnson v. Washington Metro. Area Transit Auth.,* 764 F.Supp. 1568, *amended,* 773 F.Supp. 459, 790 F.Supp. 1174 (D.D.C.1991). The Lacys contend that Sutton and Legum should have assumed the Lacys were using the space, and therefore should be bound to exercise ordinary care toward trespassers. The standard to which the Lacys refer has not been adopted in this jurisdiction. *See Holland, supra,* 431 A.2d at 601. In any event, in light of the obligations of the unit owners and occupants under the condominium documents and Sutton's and Legum's warning of danger, that one obligated to comply would not do so cannot be considered to be within the realm of reasonable foreseeability. *See Munson v. Otis,* 396 A.2d 994, 997 (D.C.1979).

■ Finally, the Lacys argue that Sutton and Legum owed them a duty of reasonable care based upon statutes and the condominium documents. First, they contend that D.C.Code §§ 45–1847(a), and –1849 (1996) create a duty of care upon which a cause of action for negligence can be based. Section 45–1847(a) provides that unless otherwise provided in the condominium instruments, responsibility for maintenance and repair of the common elements of a condominium belongs to the unit owners' association. It also grants the condominium association the power to access individual units for the purpose of repairing the common elements. Section 45–1849(a) permits an action to be filed against the association for tort for a wrong

---

**3.** *See Beard v. Goodyear Tire & Rubber Co.,* 587 A.2d 195, 198 (D.C.1991) (Summary judgment is appropriate where, viewed in the light most favorable to the non-movant, there is no issue of material fact in dispute and the movant is entitled to judgment as a matter of law.).

**4.** In light of the history of the case, we find no abuse of discretion in the trial court's ruling denying appellants leave to amend to add such a claim.

done by the agents or employees of the association to the area which the association has responsibility for maintaining. We do not read these statutes as creating substantive rights or a particular standard of care. Clearly, neither these statutes nor the by-laws give rise to a duty in the association to make safe an area for uses for which it was not structurally designed and constructed. Nor do these statutory provisions confer upon unit owners the right to use portions of the condominium elements in a manner prohibited by its bylaws and regulations. Therefore, we find no basis in the statute for application of a duty of reasonable care under the circumstances of this case.

Taking all reasonable inferences in the light most favorable to the Lacys, we cannot say that a reasonable juror, acting reasonably could find for the Lacys against these parties, given the burden of proof and the applicable law. *See Sherman v. District of Columbia,* 653 A.2d 866, 869 (D.C.1995) (citations omitted).

For the foregoing reasons, the judgment appealed from hereby is

*Affirmed.*